1  **UNITED STATES DISTRICT COURT**
2  **DISTRICT OF NEVADA**

| | |
|---|---|
| JAMES JEFFERSON KENNER, | 3:09-cv-00127-ECR-VPC |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| J. MERCER, *et al.*, | |
| Defendants. | October 22, 2010 |

This Report and Recommendation is made to the Honorable Edward C. Reed, Jr., United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is defendants' motion for summary judgment (#34).[1] Plaintiff opposed (#40), and defendants replied (#41).[2] The court has thoroughly reviewed the record and recommends that defendants' motion for summary judgment (#34) be granted.

## I. HISTORY & PROCEDURAL BACKGROUND

Plaintiff James Kenner ("plaintiff"), a *pro se* inmate, is currently incarcerated at Nevada State Prison ("NSP") in the custody of the Nevada Department of Corrections (#5, p. 1). However, plaintiff was incarcerated at the Northern Nevada Correctional Center ("NNCC") at the time of the alleged constitutional violations (#34, p. 2). Plaintiff brings his complaint pursuant to 42 U.S.C. § 1983 (#5, p. 1). Plaintiff names as defendants Joseph Mercer, Randy Tice, Kenneth Gurries, Mary

---

[1] Refers to the court's docket numbers.

[2] Plaintiff filed an additional motion styled, "Opposition to defendants' reply to plaintiff's opposition to motion for summary judgment" (#46). Defendants replied (#47). Federal Rule of Civil Procedure 54 outlines timing for summary judgment motions, responses, and replies. Plaintiff did not request the court's leave to file additional opposition following completion of the briefing on this matter; therefore, the court strikes the filing (#46) and defendant's reply (#47). The court admonishes plaintiff to refrain from filing excessive or duplicative briefing outside of the scope of permissible court filings noted in the Federal Rules of Civil Procedure. The court also notes that the appropriate motion for defendants' counsel to file in response would have been a motion to strike.

Babb, Jeffrey Wiley, Peter Garibaldi, and Shannon Moyle.[3] *Id.* p. 2-4.

The court screened plaintiff's complaint in accordance with 28 U.S.C. § 1915A (#4). The court dismissed the following claims with prejudice and without leave to amend:

      (1) Fourteenth Amendment due process claim in count one,
      (2) Fourth Amendment claim in count one,
      (3) Due Process claim against defendant Benedetti, and
      (4) Due Process claims based on the prison grievance procedure.

*Id.* at 12-13. Additionally, the court dismissed the following claims without prejudice and with leave to amend:

      (1) retaliation claim in count one,
      (2) retaliation claim in count two,
      (3) conspiracy claim against defendant Hartman, and
      (4) Equal Protection claim in count three.

*Id.* Finally, the court noted that if plaintiff failed to timely file an amended complaint the only claims that would proceed include:

      (1) Eighth Amendment excessive force claim against defendants Mercer and Gurries in count one,
      (2) conspiracy claim against defendants Mercer, Gurries, Rice, and Babb in count one,
      (3) Eighth Amendment excessive force claim against defendant Wiley in count two,
      (4) conspiracy claim against defendant Wiley in count two,
      (5) conspiracy claim against defendants Moyle and Garibaldi, and
      (6) Eighth Amendment failure to protect claim against defendant Moyle and Garibaldi.

*Id.* at 13. Plaintiff did not file an amended complaint. Therefore, plaintiff's current complaint only includes the six claims enumerated above and on page thirteen of the court's screening order.[4]

The court relates the pertinent facts contained in plaintiff's complaint (#5) and defendants' motion for summary judgment (#34). On August 29, 2008, plaintiff attended lunch at NNCC's

---

[3] Plaintiff also names as defendants Richard Hartman and James Benedetti, but the court dismissed claims against these individuals upon screening the complaint (#4, p. 13).

[4] In an effort to provide clarity, the court notes the specific claims remaining after screening. Defendants appropriately briefed the excessive force, failure to protect, and conspiracy claims. *Id.* at 8-11, 13-16. However, defendants also included briefing related to plaintiff's procedural due process claim (#34, p. 12-13), which was previously dismissed with prejudice. Plaintiff's opposition to the summary judgment motion only addresses the due process issue raised in defendants' motion (#40). As the court dismissed this claim with prejudice, a portion of defendants' motion for summary judgment and the entirety of plaintiff's opposition is moot.

cafeteria (#34, p. 2). Defendant Mercer believes he observed plaintiff putting crackers in his pocket prior to leaving the cafeteria. *Id.* Removal of food from the cafeteria is prohibited. *Id.* Defendant Mercer ordered plaintiff to remove the crackers from his pocket, but plaintiff walked away from him and toward defendant Tice. *Id.* at 3. Defendant Mercer ordered plaintiff to stop walking; plaintiff did not comply. *Id.* Believing that plaintiff made physical contact with defendant Tice, defendant Mercer placed plaintiff in handcuffs. *Id.* Defendant Tice thought he saw plaintiff kick defendant Mercer. *Id.* Mercer, along with defendant Gurries, took plaintiff to the ground in order to further restrain him. *Id.* Plaintiff describes the take down as an "attack" in his complaint (#5, p. 5) and deposition (#34, Ex. A, p. 14), explaining that defendants "body slammed [him] on the ground." *Id.* Defendants Mercer and Tice specifically recall plaintiff being taken down in the grass in order to prevent plaintiff from kicking defendant Mercer or other prison officials (#34, p. 3). Plaintiff claims defendants Mercer and Gurries used excessive force in this incident (#5, p. 5).

Defendants carried plaintiff to a medical cart, which transported him to an administrative segregation unit. *Id.* Medical staff evaluated plaintiff for injuries and found that he "possibly sustained pulled/strained muscles...however, there [were] no visible injuries, no numbness, no radiating pain, and [plaintiff] was oriented and able to respond accordingly." *Id.* at 3-4. Plaintiff did not seek follow up treatment. *Id.* at 4. According to plaintiff, following the medical evaluation defendant Wiley ordered officials to drag him to a cell in administrative segregation (#5, p. 6). Defendants claim plaintiff refused to walk so officials carried him to a cell (#34, p. 4). Plaintiff alleges that defendant Wiley authorized the use of excessive force to transport plaintiff to his cell (#5, p. 6).

On October 15, 2008, plaintiff received a notice of charges for his conduct in connection with the August 29, 2008 incident outside of the cafeteria (#34, p. 5).[5] Plaintiff signed the notice of charges and subsequently attended a disciplinary hearing at which he would found guilty of disobedience and battery. *Id.* Plaintiff received twenty-one months of disciplinary segregation, rather than twenty-four months, given the delay in service of the notice of charges. *Id.*

---

[5] Defendants state that defendant Mercer's departure from NNCC resulted in the six-week delay in issuing the notice of charges (#34, p. 4).

3

On October 24, 2008, NDOC housed plaintiff with another inmate, Mitchell Blanco, in disciplinary segregation. *Id.* Defendant Moyle determined that plaintiff and Blanco would be an appropriate match based on several factors, including ethnicity, custody level, crime, and gang affiliation. *Id.* Plaintiff did not file any grievances or kites about Blanco prior to an incident that occurred on November 11, 2008 (#34, Ex. A, p. 26). On that day, Blanco "attacked" plaintiff, hitting him in the face and stomach and screaming at him. *Id.* at 25. Defendants state that no one saw Blanco make physical contact with plaintiff (#34, p. 6). Defendant Garibaldi stopped the attack, restrained Blanco, and provided plaintiff with an opportunity to receive medical attention. *Id.* Medical staff evaluated plaintiff after the attack, but noted no signs of an attack and provided no medical treatment. *Id.* Plaintiff claims defendants Moyle and Garibaldi failed to protect him from inmate Blanco in violation of the Eighth Amendment (#5, p. 6).

Plaintiff accuses defendants of conspiracy in three separate counts. First, plaintiff accuses defendants Mercer, Gurries, Babb, and Tice of conspiring against him to "deprive [him] of his federally secured rights" in connection with the August 29, 2008 events outside of the cafeteria. *Id.* at 5. Second, plaintiff accuses defendant Wiley of conspiring with other officers to "secure [his] conviction with intent to deprive him of his federally secured rights." *Id.* at 6. Third, plaintiff accuses defendants Moyle and Garibaldi of conspiring "with other co-worker's [sic] named in the inmates [sic] civil rights complaint at N.N.C.C., in furtherance of the conspiracy . . . to secured inmate 'Kenner's' conviction . . . with intent to deprive the inmate of his federally secured rights." *Id.* at 7.

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.     Discussion**

    **1.     Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual

disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of informing the court of the basis for its motion, and submitting evidence which demonstrates the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

**B.     Analysis**

Plaintiff alleges that defendants used excessive force against him, conspired against him to deprive him of his rights, and failed to protect him from harm perpetrated upon him by another inmate (#5, p. 5-7). Defendants argue they placed plaintiff in restraints and carried him to a cell for legitimate prison safety and security purposes, using only a "good faith effort to restore order" (#34, p. 10). Further, defendants contend that the requisite "meeting of the minds" for a discriminatory

purpose, which is necessary to substantiate plaintiff's conspiracy claims, never occurred. *Id.* at 14. Finally, defendants state that they had no notice of serious risk posed by plaintiff's cell mate that would have triggered the necessity to protect plaintiff from harm. *Id.*

The court notes that in addition to briefing the claims presented above, defendants also included briefing in their motion for summary judgment regarding plaintiff's original procedural due process claim. As explained earlier, *supra* n.4 and accompanying text, the court dismissed plaintiff's due process claims with prejudice and without leave to amend (#4, p. 13). Plaintiff's reply brief only addressed due process issues, leaving the remaining facts alleged by defendants unchallenged (#40). As plaintiff fails to advance "specific facts showing that there exists a genuine issue for trial" on his remaining claims–in fact, plaintiff alleges no facts regarding issues appropriate for trial–the court may only consider the facts as defendants provide them. *Anderson*, 477 U.S. at 248.

After screening, plaintiff's claims include two counts of Eighth Amendment excessive force, one count of Eighth Amendment failure to protect, and three counts of conspiracy. The court addresses each in turn below.

**1.     Excessive Force**

Where an inmate is claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment based on use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether the force used was wanton and unnecessary "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making this determination, the court considers the following factors: (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Id.* (*citing Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Moreover, there is no need for a showing of a serious injury as a result of the force, but the lack of such an inquiry is relevant to the inquiry. *Id*. at 7-9, *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003). The court must give deference to the prison officials when reviewing use of force and

6

cannot substitute its own judgment for the judgment of prison officials. *Whitley*, 475 U.S. at 322. Unless the evidence supports a reliable inference of wantonness, the case should not go to the jury. *Id.*

Plaintiff accuses defendants Mercer and Gurries of using excessive force in taking him to the ground outside of the NNCC cafeteria. However, defendant Mercer claims he first restrained plaintiff because he believed plaintiff disregarded his order to remove crackers from his pocket and made contact with defendant Tice. Further, defendant Tice believed plaintiff kicked, or attempted to kick, defendant Mercer while being placed in restraints, necessitating plaintiff's take down by defendants Mercer and Gurries. Additionally, defendants Mercer and Tice recall taking plaintiff down in the grass so as to avoid unnecessary injury. These facts suggest the need for force in order to maintain prison security, the application of reasonable force to restrain plaintiff, and an effort by defendants to protect plaintiff from unnecessary harm. Medical evaluation of plaintiff after the take down revealed that he may have strained muscles, but otherwise showed "no visible injuries, no numbness, [and] no radiating pain." While there is no need for plaintiff to demonstrate a serious injury, the medical evaluation suggests plaintiff may not have suffered any injury. Taken together, these facts do not support an inference of wanton infliction of pain or suffering. Instead, the facts suggest a routine application of force to maintain prison safety. The court grants summary judgment as to plaintiff's excessive force claim against defendants Mercer and Gurries.

Plaintiff also accuses defendant Wiley of authorizing the use of excessive force in transporting him to a cell in administrative segregation. However, defendant Wiley recalls plaintiff yelling and being verbally abusive. Further, defendant Wiley remembers that plaintiff refused to obey orders, including his refusal to walk to a cell in administrative segregation. As a result, defendant Wiley ordered officials to carry, not drag, plaintiff to his cell. Additionally, defendant Wiley instructed officials to check on plaintiff every ten minutes. Again, these facts do not support a claim of unnecessary infliction of pain, but instead demonstrate the reasonable application of force and discretion by defendant Wiley in light of plaintiff's alleged offenses against defendants Mercer and Tice, his abusive conduct while in administrative segregation, and his refusal to obey orders. Therefore, the court grants summary judgment on plaintiff's excessive force claim against defendant

1  Wiley.

## 2. Failure to Protect

Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." *Id.* at 834. The failure of prison officials to protect inmates from attacks by other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is "objectively, sufficiently serious" and (2) the prison officials had a "sufficiently culpable state of mind," acting with deliberate indifference. *Id.* at 834; *see Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995). Thus, there is both an objective and subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 989, 904 (9th Cir. 2002).

The objective standard requires that "the deprivation alleged must be 'sufficiently serious.'" *Id.* at 834 (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "What is necessary to show sufficient harm for the purposes of the Cruel and Unusual Punishment Clause depends on the claim at issue." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* at 8.

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (*quoting Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id*. at 836. Mere negligence on the part of prison staff is not sufficient to prove deliberate indifference. *Id*. Essentially, acting or failing to act with deliberate indifference is "the equivalent of recklessly disregarding" a substantial risk of serious harm to the inmate. *Id.*

To prove deliberate indifference, the plaintiff must show that the prison official knew of and disregarded "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The plaintiff need not prove that the official believed the harm

8

would actually befall the inmate; "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id*. at 842.

Whether a prison official had the requisite state of mind is a question of fact, "subject to demonstration in usual ways, including inference from circumstantial evidence . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id*. An official will not escape liability if he has "refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." *Id*. at 843, n.8. Conversely, prison officials may show that they are not liable because they did not know "the underlying facts indicating a sufficiently substantial danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Id*. at 844. A court should not rely solely on the fact that a prisoner failed to notify prison officials of a risk of harm, but instead should look to whether the prisoner has established the prison official's awareness through other relevant evidence. *Id*. at 848 (explaining that "the failure to give advance notice is not dispositive").

Plaintiff claims that defendants Moyle and Garibaldi failed to protect him from inmate Blanco, his cell mate, on November 11, 2008, when Blanco "attacked" him. Plaintiff claims Blanco hit him repeatedly in the face, while yelling at him. However, plaintiff fails to allege facts in his opposition to suggest that defendants had any reason to know that inmate Blanco posed a risk to plaintiff, nor did he allege facts to suggest that inmate Blanco had a history of violence against other inmates. In his deposition, provided by defendants as an exhibit to their motion for summary judgment, plaintiff said he knew inmate Blanco got in fights with other inmates because Blanco told him about those occurrences. However, plaintiff did not suggest that NNCC officials were aware of any danger posed by Blanco. In fact, defendants argue that Blanco and plaintiff engaged in conversation from time to time, in addition to sharing the same custody level and ethnicity. These similarities and apparent compatibility provided the basis for the decision to house the inmates together. Further, plaintiff did not file any grievances or kites regarding Blanco prior to the incident on November 11, 2008. While the absence of a grievance is not dispositive, plaintiff fails to allege any facts to suggest that defendant were aware of or that they should have been aware of any danger

posed by Blanco, nor does plaintiff allege facts to suggest that defendants disregarded his safety. As a result of these deficiencies, the court grants summary judgment on plaintiff's claim for failure to protect against defendants Moyle and Garibaldi.

### 3. Conspiracy

To establish a claim for conspiracy to deprive a person of his or her civil rights, a plaintiff must prove that a meeting of the minds occurred between two or more persons to deprive the plaintiff of his civil rights. *See Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Additionally, the plaintiff must demonstrate that some racial or other class-based, discriminatory animus for the conspirators' conduct motivated the deprivation, and the plaintiff must be a member of the discriminated class. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045 (9th Cir. 2002). Plaintiffs alleging a conspiracy to deprive them of their constitutional rights must "include in their complaint non-conclusory allegations containing evidence of unlawful intent or face dismissal prior to the taking of discovery." *Harris v. Roderick*, 126 F.3d 1189, 1195 (9th Cir. 1997).

Here, plaintiff fails to allege facts regarding a "meeting of the minds" between defendants regarding their intention to deprive him of his constitutional rights. Further, defendant does not suggest any discriminatory motive underlying the purported conspiracy. Plaintiff simply asserts that defendants conspired against him to "deprive him of his federally secured rights." Conclusory statements, such as the one offered by plaintiff, fail to support a claim for conspiracy. The court grants summary judgment in favor of all defendants on all three conspiracy counts.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that plaintiff fails to demonstrate any issues of material fact regarding defendants' use of excessive force, failure to protect, or engagement in conspiracy. As such, the court recommends that defendants' motion for summary judgment (#34) be **GRANTED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this report and recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the

District Court.

2. This report and recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' motion for summary judgment (#34) be **GRANTED**.

**DATED:** October 22, 2010.

_____
**UNITED STATES MAGISTRATE JUDGE**